UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

)
GARDEN MEADOW, INC.                           )
                                              )
                    Plaintiff                 )
                                              )
v.                                            )          Civil Action No. 8:13-cv-01766-
                                              )          VMC-AEP
SMART SOLAR INC. and                          )
JOHN DOES Numbers 1 through 99                )
                                              )
_____               )

**GARDEN MEADOW, INC.'S OPPOSITION TO SMART SOLAR, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Garden Meadow, Inc. ("Garden Meadow"), by and through undersigned

counsel, opposes Smart Solar's ("Smart Solar") Motion for Judgment on the Pleadings

("Motion" at Dkt. 31), and states as follows:

**INTRODUCTION**

Smart Solar filed its Motion seeking judgment on the pleadings with respect to Garden

Meadow's claims for copyright infringement and trade dress infringement, because of:

(1) alleged pleading defects arising from Garden Meadow's alleged failure to:  (a) attach an

assignment of the copyright registration demonstrating Garden Meadow's ownership of the

copyrighted work, despite its reference in the body of the Complaint; (b) identify the protectable

elements of the copyrighted work alleged to be infringed; (c) use the term "widespread

distribution" to establish access; (d) allege trade dress with sufficient specificity; (e) use the term

"secondary meaning" instead of "inherent distinctiveness;" and (f) allege facts to support that its

trade dress is a source identifier; and (2) substantive grounds regarding the functionality of

Garden Meadow's trade dress and the absence of any likelihood of confusion between Garden

Meadow's and Smart Solar's trade dress.  Although unclear in its Memorandum, Smart Solar

appears also to be asking the Court to grant its claims for declaratory relief.  For all of the

reasons set forth below, Smart Solar's Motion must fail as procedurally inappropriate, and

meritless given the allegations set forth in Garden Meadow's Complaint.[1]

## **APPLICABLE LAW**

Smart Solar does not dispute that it has an extraordinarily high burden to prevail on its

Motion and must show that the Complaint fails to place Smart Solar on notice of the claims

asserted by Garden Meadow and there is no construction of the factual allegations that will

support the cause of action.  Memorandum at p. 2, *citing Hawthorne v. Mac Adjustment, Inc.*,

140 F.3d 1367, 1370 (11th Cir. 1998).

> Rule 8 of the Federal Rules of Civil Procedure specifies that a
> complaint must contain "a short and plain statement of the claim
> showing the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).
> If the complaint fails to state a claim upon which relief may be
> granted, a motion to dismiss may be granted pursuant to Federal

---

[1] The procedural history of this case is scant, because newly-substituted counsel for Smart Solar did not enter their appearance in the case until November 22, 2013, over four months after Garden Meadow filed this action.  In October, 2013, after being given two extensions to file a responsive pleading, prior counsel for Smart Solar raised a conflict of interest issue and indicated that they would need to step aside in favor of substitute counsel.  To accommodate this problem, Garden Meadow agreed to an extension to file a third-party complaint in anticipation of entry by new counsel.  The resulting delay essentially eliminated any time to conduct meaningful discovery before the closure of the pleadings.  To date, virtually no discovery has taken place. Garden Meadow propounded written discovery on Smart Solar on February 20, 2014 (the same day Smart Solar filed its Motion for Judgment on the Pleadings).  Although entirely absent from any pleading filed by Smart Solar, Smart Solar's counsel has throughout this case claimed that the accused work was manufactured, distributed, and sold by an entity formed in the United Kingdom known as Smart Solar, Ltd., with whom Smart Solar shares a website and trademark. The written discovery propounded upon Smart Solar explores, among other things, the relationship between Smart Solar, Inc. and Smart Solar, Ltd. and the need, if any, to add that Smart Solar, Ltd. as a party defendant.  The above-recited circumstances make clear that the parties will need relief from the current Case Management Order, and specifically the deadline to add parties or amend pleadings, as it would be manifestly unfair to "close" the pleadings at this time when the case stalled at the behest of Smart Solar during the period in which discovery of the above-referenced issues should have taken place.  Although the pleading insufficiencies alleged in its Motion are illusory, Garden Meadow should be allowed to amend to, among other things, correct any technical deficiencies should the Court determine any.

Rule of Civil Procedure 12(b)(6).  In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.*  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.; see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("To survive dismissal, 'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed' ") (*quoting Twombly*, 550 U.S. at 555-56).  Additionally, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, ⸺U.S. ⸺, ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

*Dodd v. Woods*, 2010 WL 2367140 (M.D. Fla.).

Smart Solar's arguments with respect to pleading sufficiency are based on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny, including but not limited to *Iqbal*.  In interpreting the pleading requirements of Fed. R. Civ. P. 8, *Twombly* does not require detailed factual allegations, but does require a plausible factual basis for relief.  *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009).  The court must accept plaintiff's allegations as true and evaluate all plausible inferences determined from those facts in favor of the plaintiff.  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  Garden Meadow's Complaint contains very detailed factual allegations which exceed the requirements of *Twombly* and *Iqbal*.  The sufficiency of the allegations is the crux of the instant controversy and must be resolved in favor of Garden Meadow on a motion for judgment on the pleadings, which concerns

only the four corners of the Complaint.  *Latele Television C.A. v. Telemundo Comm. Group*, 2013 WL 1296314, p. 8 (S.D. Fla.).

## FACTUAL ALLEGATIONS IN COMPLAINT

The Complaint (Dkt. 1) contains detailed allegations asserting two claims of copyright infringement (Count I) and trade dress infringement (Count II) against Smart Solar.

Contrary to the Motion, the Complaint (Dkt. 1) contains factual allegations of Garden Meadow's ownership of the copyrighted work (¶¶ 10, 12, 13), Smart Solar's access to the work by widespread distribution and advertising (¶¶ 9, 14, 21), the "expressions" of the copyrighted work that are protected and copied (¶ 10), detailed description of Garden Meadow's trade dress (¶ 20, 21, 25, 26, 27, 28), and how its trade dress has acquired secondary meaning.  (*Id.*)

Despite such allegations, Smart Solar demands that the Court abandon common sense and ability to draw reasonable inferences from the allegations by drawing attention to Garden Meadow's failures to use terms of art, and to heightened pleading standards that are not required and unsupported by the authority cited by Smart Solar.  Smart Solar's cited authorities are not on point, but instead fall into two subsets:   (1) authorities for generalized concepts regarding judgments on the pleadings and sufficiency of pleadings; and (2) cases where disgruntled artists sued successful ones for cribbing their ideas, but could not establish that the latter ever enjoyed access to the allegedly infringed works, under which clear and extreme circumstances courts dismissed their cases.  None of these authorities is illustrative to the instant facts.

Reproduced below are the relevant excerpts of the factual allegations contained in the Complaint:

## COUNT I
## COPYRIGHT INFRINGEMENT

. . .

9.      At all times relevant herein, **Plaintiff was variously engaged in the business of manufacturing, marketing, distributing and selling decorative solar, metal lanterns which depict various designs such as people, plants and animals**.

10.      In or about 2009, Plaintiff's principal, Sandy Cooper, created Garden Meadow's work known as **"Solar Love Birds"** **which is a self-illuminating sculpture/lantern with a bird-like body covered by a filigree-like scroll motif, a copy of which is reproduced below and is incorporated herein by reference as Exhibit A.  (This item is referred to herein as "Plaintiff's Work.")**



11.      Thereafter, Plaintiff learned that Defendants have been **copying**, reproducing, manufacturing, importing, distributing, displaying, transmitting, marketing and selling lanterns and other merchandise which are **substantially similar** to the Plaintiff's Work referenced above, **a photograph of Defendants' merchandise is reproduced below and incorporated herein by reference as Exhibit B**.  (This item is referenced herein as the "Infringing Merchandise.")  Specifically, among other things, **Defendants have been marketing and selling the Infringing Merchandise as their "Solar Bird" in KMart retail stores within the Middle District of Florida among other places**.




12. **Plaintiff has been and is the sole proprietor of all right, title and interest, including copyright, in and to the "Solar Love Birds" Work.**

13. **Plaintiff's principal received from the United States Copyright Office Certificate of Registration VA 1-680-495 for the "Solar Love Birds" Work, having an Effective Registration Date of July 30, 2009, a copy of which Certificate (including the Assignment thereof to Garden Meadow) is attached hereto and incorporated herein by reference as Exhibit C.**

14. Defendants individually, or by and through their agents, employees and representatives, with notice of Plaintiff's right, title and interest in and to Plaintiff's Works, and without Plaintiff's authorization, have used Plaintiff's Works to manufacture, reproduce, **copy**, publish, display, distribute, transmit, sell and otherwise market its Infringing Merchandise.

15. Upon information and belief, Defendants **willfully and deliberately infringed said Plaintiff's copyright by copying Plaintiff's Work**, and manufacturing, reproducing, importing, publishing, displaying, distributing, transmitting, selling or otherwise placing on the market Defendants' Infringing Merchandise and, thus, using Plaintiff's Work without authorization, all to Plaintiff's detriment.

16. Upon information and belief, Defendants have manufactured, reproduced, imported, published, displayed, distributed, transmitted, marketed, promoted and sold the Infringing Merchandise and will, unless restrained, continue to do so in the future.

17.    Defendants' infringement of Plaintiff's copyright has caused and will continue to cause immediate and irreparable harm to Plaintiff unless enjoined by this Court.

## COUNT II
## TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION PURSUANT TO THE LANHAM ACT

18.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through17 herein as though fully set forth below.

19.    **Beginning in or about 2003, Plaintiff, initially through its principle owner Sandy Cooper, developed its line of distinctive solar powered animal lantern works associated with its registered GARDEN MEADOW® trademark.**

20.    **One line has, among other unique design features, a combination of certain specific elements:  namely solar lighted lanterns with decorative design configurations (e.g. birds,  plants, animals, insects, and fish) made from metal with a rusticated brown patina and ornate filigree decorative styling with a distinctive colored foggy film-like insert which, when illuminated, diffused colored light (in distinctive shades of blue, green, orange, or pink – specifically sapphire blue, emerald green, pumpkin orange, and raspberry pink, respectively) emanates from within the sculpture, (referred to herein as Garden Meadow's "Trade Dress"), which it sells and markets in interstate commerce.**

21.    **Garden Meadow sells its line of garden lanterns and decor accessories through the hundreds of thousands of catalogs and other marketing materials it has distributed over the years, as well as through marketing at trade shows and showrooms in the United States and internationally, and through its long-cultivated, specialized, and highly valuable knowledge of and relationships with decision-makers at certain high volume retailers who are customers, or prospective customers, which Garden Meadow has developed through research, trial and error, and significant investment over many years.**

22.    **Upon information and belief, at the time Plaintiff entered the solar animal sculpture market in or around 2003, Plaintiff was the first to produce a line of solar animal sculptures that incorporate the Trade Dress described herein. Plaintiff has continuously used its Trade Dress, and Plaintiff was, at all times, the exclusive producer of such products and the exclusive user of its distinctive Trade Dress, until**

7

approximately 2010, when companies, such as Smart Solar and its suppliers, among others, began plagiarizing Plaintiff's Trade Dress and designs.

23.     Plaintiff diligently polices the market for infringements of its copyrights, trademarks and Trade Dress, and through litigation and cease and desist letters has been successful in stopping numerous infringements.

24.     Plaintiff is the owner of all right, title and interest in and to its Trade Dress and has not licensed or otherwise authorized Defendants to reproduce, manufacture, import, display, market, sell, or distribute Plaintiff's works or any derivative work or to reproduce, publish, display, distribute, transmit or otherwise use Plaintiff's Trade Dress in the marketing of the infringing works.

25.     **Plaintiff's Trade Dress, including the design, appearance, styling, look and feel of Plaintiff's works, which include but are not limited to the design elements described above, individually or in connection, are unique, arbitrary, non-functional, and inherently distinctive.   This inherent distinctiveness of Plaintiff's works is used and understood to identify Plaintiff's brand, to  distinguish Plaintiff's goods from those manufactured or sold by others, and to indicate the source and origin of these goods.**

26.     **Plaintiff's Trade Dress, including the design, appearance, styling, look and feel of Plaintiff's works, which includes but is not limited to the design elements described above, individually and in combination, which elements are not essential to the use of the product, could be replaced by other alternative design features without affecting the functionality of the product, do not materially affect the cost of the product, and create no significant non-reputation related disadvantage to competitors.**

27.     **For over a decade, Garden Meadow has extensively advertised and promoted its garden lanterns and decor accessories, including without limitation those specifically referenced above, and it has expended great time, effort, and hundreds of thousands of dollars in connection therewith.  Garden Meadow promotes its garden lanterns and decor accessories by maintaining a showroom in Shanghai, participating in trade shows, visiting buyers at their offices and elsewhere, and through the dissemination of brochures, catalogs, and postcards.  These marketing devices depict a consistent overall design, theme, configuration, construction, and overall image and appearance as a source-identifying symbol of lanterns produced by and originating from a single**

8

source, namely Garden Meadow.  By offering a variety of shapes, configurations and decorations, Garden Meadow makes it possible for devoted customers to acquire collections of garden lanterns or decor accessories, thereby building brand recognition and loyalty.

28.    As a result of Plaintiff's substantial, continuous and extensive advertising, promotion, and sales, the Trade Dress of its Garden Meadow solar animal sculpture line has acquired secondary meaning so that it identifies Plaintiff's goods, and distinguishes them from goods manufactured by others.  The Trade Dress has acquired source identifying meaning and valuable good will, all of which operates for the benefit of Plaintiff.  Plaintiff's Trade Dress is widely and favorably accepted and recognized as and identifying Plaintiff and its goods, or at least the goods of a single source, albeit an anonymous one.

29.    Defendants' infringement of Plaintiff's Trade Dress is intentional.

As is evident from the quoted and emphasized text, Garden Meadow included considerable fact-intensive allegations in its Complaint with respect to both claims.

Contrary to Smart Solar's assertion, the factual allegations relating to Garden Meadow's trade dress infringement count are incorporated into Garden Meadow's copyright infringement count, because Garden Meadow specifically incorporated its copyright infringement into the trade dress infringement count.  (*See* Dkt. 1.)  By incorporating its Copyright Infringement Count into its Trade Dress Count, Garden Meadow is applying the factual allegations to all counts. Therefore, even if it were necessary to split hairs regarding factual allegations relating to each count, it is clear by incorporation that Garden Meadow's allegations regarding advertising, distribution, and sales of its product line, including but not limited to its Solar Bird, relate to Count I for copyright infringement and support an allegation of "access" by Smart Solar.  In other words, the reasonable inference to be drawn from Garden Meadow's allegations is that Smart Solar and other entities began pirating Garden Meadow's copyrighted solar lanterns after

observing them, which they could do because the former were widely distributed in the marketplace. (Dkt. 1, ¶ 21, 22).

As alleged in the Complaint, Garden Meadow was the first, biggest player in the identified decorative solar lighting marketplace category. Reasonable inference strongly supports that companies who later entered that marketplace were aware of Garden Meadow's works, and even Smart Solar concedes that proof of access need only be proved by "reasonable opportunity" to observe the copyrighted product. *Herzog*, 193 F.3d at 1249. "Copying," as alleged by Garden Meadow, necessarily presupposes access and the aggregate facts alleged by Garden Meadow support that others, including Smart Solar, had reasonable opportunity to view Garden Meadow's Works, including the Solar Love Birds.

## **ARGUMENT**

## I. DISMISSAL BY JUDGMENT ON THE PLEADINGS WOULD BE PROCEDURALLY INAPPROPRIATE

Smart Solar expends great effort in its attempt to demonstrate that this case is ripe for disposal by judgment on the pleadings. In support of its arguments, Smart Solar relies upon various quotations from various Supreme Court and Eleventh Circuit authorities, but such authorities belie their application in the instant case primarily because this case is rife with material facts in dispute. *Hawthorne*, 140 F.3d at 1370 (Judgment on the pleadings is appropriate when there are *no material facts in dispute*, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts) (emphasis added).

Judgment on the pleadings may be appropriate where there are no material facts in dispute and the plaintiff has failed to state a claim upon which relief can be granted. Smart Solar alleges insufficiency as to the allegations of ownership and access. Paradoxically, though, Smart Solar clearly recognizes a material factual dispute with respect to similarity and likelihood of confusion, because in its Motion for Judgment on the Pleadings it asks the Court to resolve that

question of fact in its favor.  Additionally, Smart Solar's attempt to obtain declarations of non-infringement of copyright and trade dress, invalidity of trade dress, and a declaration of no unfair competition as it relates to its Counterclaims.  In making these arguments, Smart Solar is asking the Court to resolve factual issues, which is inappropriate in a Motion for Judgment on the Pleadings.  *Id.*

## II.   COPYRIGHT INFRINGEMENT

### A.   Garden Meadow Sufficiently Alleges Ownership And The Motion Should Be Denied

Smart Solar leads its arguments with an issue with which the Court can dispense in favor of Garden Meadow with little effort.  Smart Solar concedes that in ¶ 13 of Garden Meadow's Complaint, Garden Meadow states, "Plaintiff's principal received from the United States Copyright Office Certificate of Registration VA 1-680-495 for the "Solar Love Birds" Work, having an Effective Registration Date of July 30, 2009, a copy of which Certificate (including the Assignment thereof to Garden Meadow) is attached hereto and incorporated herein by reference as Exhibit C."  Garden Meadow, however, also alleges that "Plaintiff has been and is the sole proprietor of all right, title and interest, including copyright in and to the 'Solar Love Birds' Work."  (¶ 12).  While the assignment referenced in Exhibit "C" was inadvertently omitted from the Complaint, it is of no consequence, because ¶ 12 and ¶ 13 clearly establish that Garden Meadow is the copyright owner of the Solar Birds Work.  Furthermore, Garden Meadow attaches the assignment referenced in Exhibit "C" of the Complaint, thereby curing any perceived deficiency.  *See* Exhibit A.

Furthermore, there is no real controversy regarding whether Garden Meadow owns the copyright.  Smart Solar is simply pressing an inadvertent error and calling it a fatal deficiency "inconsistent" with the exhibit.  The allegations in the Complaint are not truly inconsistent with the original Exhibit C to the Complaint.  Therefore, Smart Solar's cited authorities regarding

inconsistency between pleadings and exhibits are irrelevant, and the Motion should be denied. *See, Stripteaser, Inc. v. Strike Point Tacke, LLC*, 2014 WL 866396 (S.D. Fla. Mar. 5, 2014) (denial of motion to dismiss plaintiff's copyright infringement claim).

**B. Despite Access Not Being An Element Of Copyright Infringement But Rather A Method To Prove Copying, Garden Meadow Properly Alleges Access Through Widespread Dissemination to Place Smart Solar On Notice And The Motion Should Be Denied**

In its Complaint, Garden Meadow explicitly alleges copying and substantial similarity. Smart Solar knows by virtue of the allegations in the Complaint that Garden Meadow's theory of access that underpins copying is the widespread distribution of its alleged Work. Where Smart Solar is wrong is in its allegation that Garden Meadow does not make factual allegations to support that theory. In ¶ 21 of the Complaint, Garden Meadow alleges:

> Garden Meadow sells its line of garden lanterns and decor accessories through the hundreds of thousands of catalogs and other marketing materials it has distributed over the years, as well as through marketing at trade shows and showrooms in the United States and internationally, and through its long-cultivated, specialized, and highly valuable knowledge of and relationships with decision-makers at certain high volume retailers who are customers, or prospective customers, which Garden Meadow has developed through research, trial and error, and significant investment over many years.

Garden Meadow's copyright claim is incorporated into the count for trade dress infringement which, in part, is the subject of the allegations in ¶ 21 of the Complaint. (Dkt. 1). The reasonable inference to be drawn from Garden Meadow's Complaint is that Smart Solar had access to Garden Meadow's copyrighted Solar Love Birds Work because that Work is part of a product line that Garden Meadow has been selling in the marketplace it has defined since 2003. *See* ¶¶ 21 and 22 of the Complaint.

Smart Solar's entire argument regarding access stems from hairsplitting over verbiage. It is not reasonable for Smart Solar to claim that it was implausible that Smart Solar had access to

12

Garden Meadow's product line including, but not limited to, the Solar Love Birds Work.  Smart Solar's authorities cited in support of its argument regarding access are so distinguishable from the instant case that they actually militate in favor of Garden Meadow.

In *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241 (11th Cir. 1999), the plaintiff sued various defendants alleging that the makers of a film called "Lone Star" was a product of the infringement of a film student's manuscript called "Concealed."  The court dismissed the plaintiff's claims *at the summary judgment stage*, where it at a minimum considered an uncontroverted affidavit of the director of "Lone Star" who denied all of the speculative allegations as to his access to the plaintiff's manuscript.  In *Herzog*, the plaintiff alleged that she gave a copy of her manuscript to certain people (not the defendant) involved with her academic pursuits, and to one other person who was acquainted with the director of "Lone Star."  The plaintiff also alleged without support that the acquaintance must have given a copy of the manuscript to the director when the two men happened to be in Miami at the same time.  Not only was that theory of access wildly speculative, but the allegation that the director of "Lone Star" met with or otherwise obtained the manuscript was denied in an uncontroverted affidavit.

Two other cases cited by Smart Solar are equally inapplicable.  In *Hill v. Gaylord Entertainment*, 2008 WL 783756 (S.D. Fla. Mar. 20, 2008), another manuscript case, the District Court dismissed the plaintiff's case on a motion for judgment on the pleadings after plaintiff failed to respond to the motion or to the Court's show cause order because the plaintiff had not alleged copying, but only a strong similarity between the plot of the plaintiff's written work and the plot of a movie called "Donnie Darko."  In that case, the plaintiff alleged he sent his written work to *non-defendant publishers and literary agents* for possible publication.  As in *Herzog*, though, plaintiff did not allege in any way that the defendants had access to the allegedly copied work.

In *Feldman v. 20th Century Fox Film Corp.*, 723 F.Supp.2d 357 (D. Mass. 2010), the plaintiff made outlandish allegations of access based wholly on speculation, including the mere possibility of computer hacking, eavesdropping, and sabotage by her ex-boyfriend.  The court found the plaintiff's allegations fanciful and unsupported by facts.  In that case, the plaintiff herself defined the possibility of access as not being "beyond the scope of reality or reason."

The above-cited cases clearly involve extreme examples of failure to allege reasonable access.  They are also not commercial cases.  Here, by contrast, Garden Meadow alleged it sells its products in high volume retail stores, in catalogs, and advertises and sells at trade shows, and that it does so in a widespread manner in the relevant marketplace.  The court in *Feldman* recognized that "widespread dissemination, for example by extensive publication, may be sufficient to demonstrate a reasonable likelihood of access, as required to establish actionable copying element of a copyright infringement claim."  Garden Meadow met its burden in this case by alleging the widespread dissemination of its product line as set forth in ¶¶ 21 and 22 of its Complaint.

This is a commercial case.  Garden Meadow distributes its product line widely, and it is well known in the solar lighting marketplace, as evidenced by the Complaint.  In commercial cases, it is precisely the circumstance in which products get "knocked off."  Of course, Garden Meadow cannot at a pleading stage establish the mechanism by which Smart Solar observed Garden Meadow's product on the internet or in a catalog or at a trade show, but it doesn't need to.  Smart Solar certainly had every "reasonable opportunity" to do so.  Garden Meadow appropriately alleged that it widely advertises in the United States and internationally in catalogs and at trade shows and since 2003 was the first and biggest player in the solar lantern marketplace, and that its products began being pirated in or about 2010.

**C.**     **Garden Meadow Properly Alleged Copying Of Copyrighted Works And The Motion Should Be Denied**

With regard to the "expression" versus "idea" analysis, Smart Solar gets very creative in its manipulation of the language of Garden Meadow's Complaint.   On page 8 of its Memorandum, Smart Solar self-servingly labels Garden Meadow's description of the Solar Love Bird as an "idea" rather than an "expression," where Garden Meadow describes the Solar Love Bird as a "self-illuminating sculpture/lantern with a bird-like body covered with a filigree-like scroll motif."  A solar lantern may be an idea, but the reduction of that idea to a self-illuminating sculpture/lantern with a bird-like body covered with a filigree-like scroll motif is an expression of that idea, and Garden Meadow's expression is protected.  Smart Solar's arguments regarding the identification of protected elements and substantial similarity are creative but also wrong. Further, none of the authorities cited by Smart Solar in support of this argument hold what Smart Solar purports they hold.

Smart Solar essentially argues that Garden Meadow's claim for copyright infringement must be dismissed at the pleading stage because Garden Meadow failed to explicitly parse the protectable elements of its Works from unprotected "ideas" in conjunction with its allegation that the accused Work is "substantially similar."  Smart Solar cites an unpublished decision, *Dodd v. Woods*, 2010 WL 2367140 (M.D. Fla.), in support, apparently unable to locate any published authority for such a rigid requirement.  Unfortunate still for Smart Solar is that *Dodd* does not hold for the stated proposition and is otherwise distinguishable from the instant case.

*Dodd* was yet another stolen manuscript case.  Dodd alleged that the defendants' motion picture was "strikingly similar" to the "concepts and inception methods" embodied in his manuscript and that this manuscript and the offending motion picture shared a main character name.  Dodd failed to specifically allege copying, nor did he describe any additional similarities between his and the offending work.  The court dismissed the case because Dodd failed to plead

any facts of similarity, not because Dodd failed to enumerate his protected expression, as opposed to unprotectable ideas.  To his detriment, his pleading was almost entirely limited to "ideas" by his use of the term "concepts."

The only published authority cited by Smart Solar in ostensible support of its parsing argument is *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000).  That case involved the alleged copyright infringement of the plaintiff's original photograph of the "Bad Girl" statue in Savannah, Georgia's Bonaventure Cemetery.   The plaintiff alleged that Warner Brothers infringed his photograph by using it in the film "Midnight In The Garden Of Good And Evil" and related promotional materials.  The Eleventh Circuit upheld summary judgment in favor of Warner Brothers as it related to the film, but reversed as it related to promotional materials.  As related to the film, the court determined, under the summary judgment standard, that the plaintiff failed to demonstrate a jury question as to whether the film use infringed the photograph's protectable elements.   Nothing in the case discussed an analysis of protectable-versus-non-protectable elements at the pleading stage.  In fact, the Eleventh Circuit is clear that separating the protected elements from the non-protected elements is an appropriate exercise for the court when analyzing substantial similarity at some time other than the pleadings stage, most notably at the summary judgment stage or later.  *Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*, 476 Fed. Appx. 190, 192, 2012 WL 1320122 (11th Cir. Fla.).

Garden Meadow certainly alleged copying and substantial similarity in its Complaint, and further identified the expression of its idea.  The concept of a solar animal lantern may be an idea, but the actual "Solar Love Birds" which is, in fact, a self-illuminating sculpture/lantern with a bird-like body covered in a filigree-like scroll motif, and which is also made with an artificial rusticated patina finish consistent with Garden Meadow's line, is protected expression. If these myriad adjectives were inadequate, Garden Meadow's Complaint fixes this by adding

16

several photographs, each of which is, at least axiomatically, worth a thousand words.  Garden Meadow's Complaint contains photographs of the Solar Love Birds and the accused Work for comparison.  The photographs depict each and every similarity.  It is not therefore practically or legally required that Garden Meadow plead additional facts in support of copying and substantial similarity.

## III.   TRADE DRESS INFRINGEMENT

### A.   Garden Meadow Properly Alleged Trade Dress Infringement

In support of its Motion, Smart Solar argues that Garden Meadow has failed to sufficiently allege the elements of its trade dress over which it claims protection.  Smart Solar's argument is misplaced, and the authorities cited in support thereof are indistinguishable.

Smart Solar admits that the Complaint sets out the distribution of Garden Meadow's business and trade dress in excruciating detail.  *See* ¶¶ 21, 22, 25, 26, 27, and 28 of its Complaint (Dkt. 1).  (*See also* excerpts set forth, *supra*).  Garden Meadow's trade dress description is neither lacking in specificity nor is it brief.

The final paragraph of Section "A" of Smart Solar's trade dress argument illuminates a fatal flaw, which is that Smart Solar is really asking the Court to resolve a material factual dispute.  Therein Smart Solar states:

> Moreover, the few elements Plaintiff does describe – the use of metal, the use of 'decorative design configurations,' a patina finish, the use of filigree, the use of color – are too common to the genre of solar lanterns to be protectable.  As one court has explained, 'no designer should have a monopoly on designs regarded by the public as the basic form of a particular item.'"  *Citing Abercombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002).

Forgetting for a moment that Smart Solar's argument is, at best, inaccurate because the Complaint describes many elements as opposed to a few, Smart Solar's argument must fail because it presupposes unproven facts not contained in the pleadings or subject to judicial notice

under FRE 201 (e.g. what elements Smart Solar claims are "common to the genre"), and also asks the Court to decide a disputed fact.  This is wholly inappropriate to resolve a motion for judgment on the pleadings.

Distilled to its essence, Smart Solar's primary argument is that Garden Meadow failed to allege "image advertising," as if all Garden Meadow alleged related to advertising and promotional activities.  However, Garden Meadow further alleged that it was the first to introduce its animal lantern sculptures in 2003 and that was the "only game in town" for the next seven years, before other companies began infringing Garden Meadow's Works.  That, in conjunction with the widespread distribution of its works, trade shows, display in show rooms, extensive advertising, catalog sales, and sales in big box stores, supports Garden Meadow's claim of secondary meaning.[2]  (Dkt. 9, ¶¶ 21, 22, 25, 26, 27, 28).  It is also important to reiterate that ¶ 27 of the Complaint states, among other things related to its trade dress, that, "[T]hese marketing devices depict a consistent overall design, *image*, configuration, construction, and overall *theme* and appearance as a source-identifying symbol of lanterns produced by and originating from a single source, namely Garden Meadow."

Smart Solar's "sufficiency of pleadings" arguments are an attempt to convert the *Twombly/Iqbal* analysis into a doctrine that requires certain mandatory phraseology.  However, its intended purpose is instead merely to require the pleading of a plausible factual basis, and more than merely a formulaic recitation of the elements of a cause of action.  *Wilchombe*, 555 F.3d at 958.  Nevertheless, a fair reading of the quote above from paragraph ¶ 27 is that Garden Meadow targets its advertising and promotional efforts at "image" and "theme" as well as sales.

---

[2] Smart Solar's argument that Garden Meadow's trade dress claim cannot survive if based on "inherent distinctiveness" ignores the fact that Garden Meadow's Complaint alleges detailed facts to support "secondary meaning," including the specific allegation of "secondary meaning" in ¶ 28 of the Complaint.

B.      **Garden Meadow's Trade Dress Is Not Functional**

With regard to functionality, Smart Solar clearly demonstrates in its Motion that it is not really arguing a motion for judgment on the pleadings at all.  On a 12(c) motion, the Court must take Garden Meadow's allegations as true and in a light most favorable to the plaintiff.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  In its Complaint, Garden Meadow expressly states that elements of its trade dress are *not* functional and explains why, including by stating the alternative design elements that could have been used without affecting functionality or cost.  (Dkt. 1, ¶ 26).

Smart Solar asks the Court to ignore the Complaint or to determine the allegations therein are untrue, which is wholly improper in a motion for judgment on the pleadings.  Additionally, Smart Solar is asking the Court to look outside the pleadings to determine an issue of fact by turning the Court's attention to the definition of "patina" on page 18 of its Memorandum.  That too is improper (by definition) in a motion made "on the pleadings."  Smart Solar's point regarding patina is also nonsense, insofar as Smart Solar suggests that Garden Meadow seeks to protect a patina that occurs naturally through age or exposure.  However, where it is produced artificially and consistently as a cosmetic feature, it is clearly non-functional.

C.      **Likelihood of Confusion Is A Question Of Fact**

As it does in its argument(s) related to copyright infringement, Smart Solar asks the Court to engage in inappropriate fact finding based on "likelihood of confusion" with respect to Garden Meadow's trade dress claim.  Smart Solar concedes that likelihood of confusion, like substantial similarity, is generally a question of fact.  As its cited authorities demonstrate, in the limited instances where likelihood of confusion or substantial similarity may be decided as a matter of law, this is only appropriate pursuant to a motion for summary judgment, after an

opportunity to conduct discovery. *Abercrombie*, 280 F.3d at 627, *citing White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-232 (6th Cir. 1994).

Smart Solar's citation to *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986), and *Dippin' Dots, Inc.*, 369 F.3d 1197 (11th Cir. 2004), does nothing to advance its position. These cases were, as was *Abercrombie*, decided at *the summary judgment stage*. The qualitative analysis that Smart Solar asks the Court to make is simply inappropriate on a motion for judgment on the pleadings.

## **CONCLUSION**

Smart Solar's Motion for Judgment on the Pleadings is premature. Smart Solar's Motion should also be denied because (1) it is based on arguments that take the *Twombly/Iqbal* rationale to an irrational extreme, and (2) Smart Solar throughout its Memorandum asks the Court to make findings of fact that are unsuited for a motion for judgment on the pleadings.

Respectfully submitted,


 */s/ Kyle Anne Citrynell*
KYLE ANNE CITRYNELL
Admitted *Pro Hac Vice*
Kentucky Bar No. 77512
*Attorney for Plaintiff Garden Meadow, Inc.*
SEILLER WATERMAN LLC
Meidinger Tower, 22nd Floor
462 S. Fourth Street
Louisville, Kentucky  40202
Telephone:  (502) 584-7400
Facsimile:  (502) 583-2100
Email:  citrynell@derbycitylaw.com

*-and-*

ZACHARY D. MESSA
Florida Bar No. 0513601
*Local Counsel for Plaintiff Garden Meadow, Inc.*
JOHNSON, POPE, BOKOR,
   RUPPEL & BURNS, L.L.P.
911 Chestnut Street
Clearwater, Florida  33756
Telephone:  (727) 461-1818
Facsimile:  (727) 462-0365
Email:  zacharym@jpfirm.com

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Dineen Pashoukos Wasylik
dineen@ip-appeals.com

Peter John Grilli
meditr@aol.com

*/s/ Kyle Anne Citrynell*
KYLE ANNE CITRYNELL

G:\doc\KAC\Garden Meadow\Smart Solar-Kmart-solar bird\Pldgs\Resp Mot for Judgment on Pldgs.docx